**MAHIR S. NISAR** (NY #4788766)
*Principal*
**KIMBERLY NOE-LEHENBAUER** (OK #34744)*
*Senior Counsel*
**Nisar Law Group, P.C.**
60 E. 42nd Street, Ste. 4600
New York, New York 10165
(212) 600-9532
mnisar@nisarlaw.com
kimberly@nisarlaw.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MUSSAB ALI,**<br><br>*Plaintiff,*<br><br>v.<br><br>**JERSEY CITY BOARD OF EDUCATION,** ***et al.*****,**<br><br>*Defendants.* | Civil Action No. 2:26-cv-5754 |

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………...…………1

STATEMENT OF FACTS……………………………………………………...………2

ARGUMENT……………………………………………………………………...………4

**I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS THAT DEFENDANTS' OUTRIGHT BAN OF ALI VIOLATES FEDERAL AND STATE LAW**……………... …….5

A. Plaintiff has shown that Defendants applied their ban as retaliation for his protected First Amendment protest activity……………………………………………….……5

B. Plaintiff has shown that Defendants punished him for his past and chilled his future First Amendment protected assembly rights……………………………………………6

C. Plaintiff has shown that Defendants made false and stigmatizing comments while depriving him of due process, protected assembly, and the right to vote…………………7

D. Plaintiff has shown that Defendants' ban on entering his polling location serves no compelling government interest and is not narrowly tailored……………….…………8

**II. PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF EMERGENCY RELIEF**……………………………….………………………………10

A. Loss of First Amendment Freedoms Constitutes Irreparable Harm……………….…10

B. The Imminent Deprivation of Plaintiff's Right to Vote in Person Is Irreparable…..…11

**III. THE BALANCE OF EQUITIES TIPS DECISIVELY IN PLAINTIFF'S FAVOR**……11

A. Plaintiff will suffer daily harm without injunctive relief; Defendants will not suffer either way……………………………..…………………………………….……11

B. Everyone is harmed by arbitrary and capricious government action…………………12

**IV. THE PUBLIC INTEREST STRONGLY FAVORS INJUNCTIVE RELIEF**………..…13

A. Free speech, protest, and assembly rights are essential for a free people…………..…13

B. Public interest demands protection of the right to vote, due process, and equal protection……………………………………………………………………...……13

**V. THE BOND REQUIREMENT SHOULD BE WAIVED OR SET AT A NOMINAL AMOUNT**…………………………………………………...……………..………14

CONCLUSION……………………………………………………………………………14-15

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Celebrezze, 460 U.S. 780 (1983)……………………………………………………8
Burdick v. Takushi, 504 U.S. 428 (1992)……………………………………...……………8
Bush v. Gore, 531 U.S. 98 (2000)……………………………………..………………8
Connick v. Myers, 461 U.S. 138 (1983)………………………………………………..……5
De Jonge v. Oregon, 299 U.S. 353 (1937)……………………………………...………6
Dee v. Borough of Dunmore, 549 F.3d 225 (3d Cir. 2008)……………………………….………7
Delaware State Sportsmen's Ass'n v. Delaware Dep't of Safety & Homeland Security, 108 F.4th 194 (3d Cir. 2024)…………………………………………………………………..……10
Elrod v. Burns, 427 U.S. 347 (1976)……………………………………………………………..10
Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009)………………………………….……………5, 6
Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 432 (1974)…………………………………………………………………...……………5
Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966)……………………..…………8
Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006)……………………….……………7
Hohe v. Casey, 868 F.2d 69 (3d Cir. 1989)…………………………………………………14
Ireland v. Hegseth, 772 F. Supp. 3d 560 (D.N.J. 2025)…………………………….………14
Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)………………...……5
NAACP v. Alabama ex rel. Patterson, 357 U.S. 449 (1958)……………………………...……6
Nken v. Holder, 556 U.S. 418 (2009)……………………………………………………………13
Paul v. Davis, 424 U.S. 693 (1976)………………………………………………………..……7
Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. 14 (2020)…………………..……6, 10
Snyder v. Phelps, 562 U.S. 443 (2011)……………………………………………………………5
Spone v. Reiss, 2025 U.S. App. LEXIS 4855 (3d Cir. 2025)……………………………..………5
Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000)…………………………………………………5
Temple University v. White, 941 F.2d 201 (3d Cir. 1991)………………………………….……14
Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)………………………5, 11
Wisconsin v. Constantineau, 400 U.S. 433 (1971)…………………………………..………7

**Federal Statutes and Rules**

42 U.S.C. § 1983……………………………………………………………………...………5
Fed. R. Civ. P. 65(c)……………………………………………………………...………14

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

## INTRODUCTION

This motion presents a straightforward case for emergency injunctive relief. Plaintiff Mussab Ali is a declared candidate for the United States House of Representatives in the June 2, 2026 Democratic primary election — an election now days away. His designated polling place is inside a Jersey City public school. The Jersey City Board of Education has formally banned him from all district property. Under the terms of that ban, he cannot enter his polling place to vote in person without first obtaining the discretionary permission of the district Superintendent, permission that has been denied on every prior occasion he has sought it.

A congressional candidate cannot be banned from his own polling place by a government body. The right to vote in person is fundamental. The loss of Fourteenth Amendment protections, especially the loss of the right to vote, even for minimal periods of time, constitutes irreparable harm. The June 2 primary is days away. There is no time for ordinary motion practice. Emergency relief is required.

The injunctive relief sought here is modest and precise: enjoin Defendants from applying the Resolution to bar Plaintiff from his designated polling place, and enjoin enforcement of the Resolution against Plaintiff based on his exercise of protected political speech and assembly. No government interest, certainly none asserted by Defendants here, is sufficient to justify banning a congressional candidate from voting in his own election.

## STATEMENT OF FACTS

On February 19, 2026, the Jersey City Board of Education adopted a resolution (the "Resolution") banning Plaintiff Mussab Ali from all Jersey City Public Schools district property, conditioned only on the prior discretionary approval of the Superintendent of Schools, Dr. Norma Fernandez. *See* Complaint ¶¶ 45, 49-52, 58. The Resolution was adopted without advance public notice on the meeting agenda, without investigation, without hearing, and without any opportunity for Plaintiff to be heard. *Id.* ¶¶ 45-46. Three of nine Board members publicly stated there was insufficient evidence to support the Resolution before voting against it. *Id.* ¶ 57.

The Resolution's stated factual basis — that Plaintiff organized a student walkout from school on February 13, 2026 — is false. *Id.* ¶ 47. Plaintiff was not on school property at any time on February 13. *Id.* ¶ 42. The walkout was organized entirely by students. *Id.* ¶¶ 34-35. The students themselves publicly confirmed they reached out to Ali as a trusted adult, not the other way around, and that the walkout was entirely student-led. *Id.*

Plaintiff's designated polling place for the June 2, 2026 Democratic primary, the election in which he is on the ballot for the United States House of Representatives, is located inside a building owned and operated by the Jersey City Public School district, PS #6 at 100 St. Pauls Avenue, Jersey City, NJ 07306. *Id.* ¶ 33. Plaintiff has contacted Superintendent Fernandez on two separate occasions to request permission to enter district property for community events since the Board's ban was implemented. *Id.* ¶ 64. Both requests were denied. *Id.* Under the terms of the Resolution as enforced by Defendant Fernandez, Plaintiff cannot enter his polling place to vote in person at the June 2, 2026 Democratic primary without first contacting Fernandez and

obtaining her explicit, discretionary approval — approval she has denied on every prior occasion. *Id.* ¶ 81.

The June 2, 2026 Democratic primary is days away. *Id.* Plaintiff faces the imminent, concrete deprivation of his right to vote in person in an election in which he is himself a candidate for federal office.

Defendants' conduct was retaliatory in nature. The Resolution was adopted in direct response to Plaintiff's participation in a lawful, peaceful political demonstration at City Hall on February 13, 2026, concerning United States ICE activity and its impact on Jersey City families. *Id.* ¶¶ 47-58. Four City Council members participated in the same demonstration. *Id.* ¶ 67. A sitting Member of Congress participated in a similar demonstration at another school in the same period. None of those officials were banned. *Id.* Defendant Velázquez subsequently attended the March 1, 2026 ICE OUT Jersey City rally, the same type of demonstration she cited as grounds for banning Plaintiff, without sanction. *Id.* ¶ 68. Defendant Morris also attended. *Id.* At that rally, Morris shouted from the audience that the Board would have banned Commissioner O'Dea if he had attended the February 13 walkout alongside Plaintiff, confirming the ban is viewpoint-based, not conduct-based. *Id.* ¶¶ 69-70.

The Resolution remains in effect, has never been published on the Board's public website, and no appeal process has ever been provided to Plaintiff despite the Board's attorney's promise to do so. *Id.* ¶¶ 65-66.

## ARGUMENT

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing is held and merits adjudicated. Granny Goose Foods v. Bhd. Of Teamsters & Auto Truck Drivers, 415 U.S. 432, 439 (1974). The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Ireland v. Hegseth*, 772 F. Supp. 3d 560, 564 (D.N.J. 2025). A party seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

The Democratic primary election for New Jersey's 8th congressional district is 13 days away. If this Court fails to act before that time, Plaintiff will lose his right to cast a ballot with his own name on it, at the whim of an angry, retaliatory school board. Local school superintendents do not and should not have the power to deprive a citizen of the right to vote. A temporary restraining order is necessary here to make sure Plaintiff has access to his polling place. The temporary restraining order should then be converted into a preliminary injunction as soon as a hearing may be held, and last through the pendency of this litigation to restore Plaintiff's ability to engage in public community events and meetings.

### I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS THAT DEFENDANTS' OUTRIGHT BAN OF ALI VIOLATES FEDERAL, STATE LAW

#### A. Plaintiff has shown that Defendants applied their ban as retaliation for his protected First Amendment protest activity.

To state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show: (1) he engaged in constitutionally protected activity; (2) the government took an adverse action that would deter a person of ordinary firmness from continuing to engage in that activity; and (3) his protected activity was a substantial or motivating factor in the government's adverse action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

**Protected activity:** Plaintiff attended and spoke at a peaceful, permitted, lawful political demonstration at City Hall concerning federal immigration enforcement, a matter of profound public concern. This is paradigmatic First Amendment political speech. *Connick v. Myers*, 461 U.S. 138, 145 (1983); *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). He was not on school property. He organized nothing. The walkout was student-organized, as the student organizers themselves publicly confirmed.

**Adverse action:** A formal government resolution banning a citizen from all public school property, enforced by security personnel, backed by the threat of criminal trespass prosecution, and transmitted through the Board's attorney is an adverse action that would deter any person of ordinary firmness from exercising First Amendment rights. *See Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000).

**Causation:** The Resolution's own text identifies Plaintiff's attendance at the February 13 demonstration as its sole factual basis. The temporal proximity between the demonstration and the Resolution — less than one week — is itself compelling evidence of retaliatory motive. *See Gorum*, 561 F.3d at 188. The disparate treatment of four City Council members and a sitting Member of Congress who engaged in identical conduct, none of whom were banned, confirms

viewpoint-based retaliation. Defendant Velázquez's subsequent attendance at the March 1 rally — the same type of event — while incurring no sanction, is devastating confirmation that the target was Plaintiff's politics, not any conduct.

Plaintiff is likely to succeed on Count I.

### B. Plaintiff has shown that Defendants punished him for his past and chilled his future First Amendment protected assembly rights.

The right to assemble peaceably on matters of public concern is an independently protected First Amendment right. *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). Government action that directly burdens the right of assembly is subject to First Amendment scrutiny independent of retaliatory motive. In the First Amendment context, the Third Circuit has recognized that the loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). The Supreme Court has confirmed this principle applies across all First Amendment contexts. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020).

The Resolution, on its face, punishes Plaintiff for attending a peaceful, permitted political assembly. Its stated basis is his attendance at the demonstration. That is, by definition, the imposition of a formal government sanction for constitutionally protected assembly. No government interest asserted, including student safety from the attendance of a former Board President and respected community leader at an off-campus rally, is sufficient to justify that burden. Even if they could, the Resolution’s ban is not narrowly tailored. It not only prohibits Plaintiff from attending sporting events, public meetings, and other events on school property

that other similarly situated people are permitted to attend, but it places his right to vote at the mercy of a local school superintendent who is not constitutionally authorized to be the arbiter of federal elections.

Plaintiff is likely to succeed on Count II.

### C. Plaintiff has shown that Defendants made false and stigmatizing comments while depriving him of due process, protected assembly, and the right to vote.

The stigma-plus doctrine recognizes a cognizable liberty interest where the government makes false and stigmatizing statements about an individual in conjunction with a tangible deprivation of a legally recognized right. *Paul v. Davis*, 424 U.S. 693, 711 (1976); *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Spone v. Reiss*, 2025 U.S. App. LEXIS 4855, *16 (3d Cir. 2025) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). To state a constitutional tort under the Fourteenth Amendment, "a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Dee v. Borough of Dunmore*, 549 F.3d 225, 233-34 (3d Cir. 2008)

The Resolution brands Plaintiff a threat to children, accuses him of jeopardizing student safety, and holds him to a student code of conduct he was never subject to. These accusations are false and demonstrably damaging to Plaintiff's reputation in the community, especially as a political candidate. They were accompanied by the tangible plus of a formal government ban from attending public events that other politicians who supported the student walkout are still allowed to attend. Defendants also deprived Plaintiff of his constitutionally protected right to due process. He received no notice, no investigation, no hearing, and no opportunity to respond

before the ban was imposed, a fact publicly acknowledged by the three Board members who voted against the Resolution. No appeal process has been provided despite the Board's attorney's promise. Post-deprivation process is nonexistent. And as it stands, the ban will also deprive Plaintiff of his right to cast an in-person ballot in his own election.

Plaintiff is likely to succeed on Count III.

### D. Plaintiff has shown that Defendants' ban on entering his polling location serves no compelling government interest and is not narrowly tailored.

The right to vote is a fundamental constitutional right. *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 665 (1966). Government action that substantially burdens the right to vote is subject to heightened scrutiny under the *Anderson-Burdick* framework. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). And the Equal Protection Clause requires at minimum that government action affecting the fundamental right to vote satisfy "the minimum requirement for nonarbitrary treatment of voters," and the "problem inheres in the absence of specific standards" governing the exercise of official discretion over access to that right. *Bush v. Gore*, 531 U.S. 98, 105–06 (2000).

Plaintiff's polling place is inside a Jersey City public school. The Resolution prohibits him from entering any district property without prior discretionary approval from Superintendent Fernandez. That approval is entirely within her discretion, has no defined standard, and has been denied on every prior occasion. Under the Resolution as enforced, Plaintiff cannot vote in person at the June 2, 2026 Democratic primary, the election in which he is himself a candidate for the United States Congress, without calling a school official and asking her permission to enter his polling place.

No government interest — much less a compelling one — is sufficient to justify conditioning a congressional candidate's access to his polling place on the discretionary approval of a school administrator who retaliated against him, particularly where the restriction burdens his fundamental right to vote and is unsupported by any individualized safety finding. The Board's asserted interest, student safety from a former board member's attendance at a peaceful off-campus rally, was unsupported by investigation, was found insufficient by three Board members at the meeting itself, and cannot survive any level of constitutional scrutiny, let alone the heightened scrutiny demanded by deprivation of a fundamental right. In any event, Defendants cannot establish that banning Plaintiff from his polling place is narrowly tailored to achieve student safety. Board members admitted Plaintiff's participation in the walkout would not have been a problem if it had happened two hours later, revealing that the Board's interest is control, not safety. And Plaintiff communicated with student organizers and participated in the walkout on February 13 without ever setting foot on school property. So Defendants' ban would not prevent the same thing from happening in the future, making it useless.

Even if the Resolution is analyzed as a generally applicable access restriction rather than an election regulation — and thus outside the *Anderson-Burdick* framework — it independently violates the Equal Protection Clause because it vests a single executive official with wholly standardless, unreviewable discretion over whether one identified citizen may enter his polling place to vote, without criteria governing the grant or denial of permission, without any timeline for decision, and without any avenue of appeal.

Plaintiff is likely to succeed on Count IV.

## II. PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF EMERGENCY RELIEF

Plaintiff faces two independent and compounding sources of irreparable harm, each of which alone is sufficient to warrant emergency relief.

### A. Loss of First Amendment Freedoms Constitutes Irreparable Harm

The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This principle was confirmed and extended by the Court in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020), which cited *Elrod* in holding that the loss of First Amendment freedoms, even briefly, constitutes irreparable harm for purposes of preliminary injunctive relief. The Third Circuit has recognized that "[u]nique First Amendment doctrines" support the presumption that First Amendment injuries are irreparable, based on "the notion that every day a plaintiff can't speak, write, associate or pray is necessarily irreparable." *See Delaware State Sportsmen's Ass'n v. Delaware Dep't of Safety & Homeland Security*, 108 F.4th 194, 205 (3d Cir. 2024).

Plaintiff's First Amendment freedoms — his right to speak on matters of public concern, his right to assemble peaceably, his right to participate in political life without fear of official government retaliation — are being actively suppressed every day the Resolution remains in force. The ongoing chilling of Plaintiff's political activity during an active congressional campaign is not compensable by monetary damages alone. Every day that passes under the Resolution's shadow is a day of irreparable harm to Plaintiff's political speech and candidacy.

### B. The Imminent Deprivation of Plaintiff's Right to Vote in Person Is Irreparable

The June 2, 2026 Democratic primary is days away. Plaintiff's designated polling place is on school property. The Resolution prohibits his entry without permission that has been denied on every prior occasion. If he cannot vote in person on June 2, that harm cannot be undone. No money damages can replicate the right to cast an in-person ballot in one's own election. An election once held cannot be re-run to restore the right to vote that was denied.

The time-sensitive nature of this harm is self-evident. If the Court does not act before June 2, the voting rights deprivation will be complete and irremediable. This is the definition of irreparable harm. The availability of mail-in voting does not cure this harm. The right to personally cast a ballot is constitutionally protected. Forcing a citizen to use an alternative mechanism as a consequence of an unconstitutional government restriction does not remedy the constitutional violation — it merely manages its consequences while the violation continues.

## III. THE BALANCE OF EQUITIES TIPS DECISIVELY IN PLAINTIFF'S FAVOR

The relevant inquiry on the balance of equities is what harm Plaintiff will suffer without relief compared to what harm Defendants will suffer with it. *Winter*, 555 U.S. at 20.

### A. Plaintiff will suffer daily harm without injunctive relief; Defendants will not suffer either way.

Plaintiff will be unable to vote in person in the June 2 election. His First Amendment rights will remain actively suppressed throughout the remainder of his congressional campaign. He will continue to suffer the stigma of an official government ban based on false accusations. Every day of continued enforcement is a day of irreparable constitutional harm.

Defendants will suffer essentially no harm if they are enjoined from enforcing the Resolution. The injunction sought here does not require Defendants to take any affirmative action. It simply prohibits them from enforcing the Resolution against Plaintiff's access to school property, including his polling place, and from retaliating against him for constitutionally protected conduct. Defendants offer no legitimate government interest that would be harmed by allowing a private citizen to vote in person and to attend political events without fear of official government sanction.

The student safety rationale Defendants have offered — their only asserted justification — fails entirely. Plaintiff was not on school property on February 13. No investigation was conducted. No evidence of safety risk was offered. Three Board members rejected the factual premise of the Resolution at the meeting. The same Board trustees who enacted the ban attended the same type of demonstration one week later without any safety incident. And they all admitted Plaintiff's participation in the walkout and rally would not have been a problem later in the day or on the weekend. What safety are Defendants securing by preventing Plaintiff from voting and attending community events? None.

**B. Everyone is harmed by arbitrary and capricious government action.**

The public's interest in the integrity of government process will be served by injunctive relief. Granting the injunction reinforces, rather than disturbs, the orderly conduct of government. Enjoining an unconstitutional government ban restores the status quo and disapproves government censorship without process or purpose. Maintaining the ban pending litigation perpetuates the constitutional violation.

The balance of equities tips decisively in Plaintiff's favor.

## IV. THE PUBLIC INTEREST STRONGLY FAVORS INJUNCTIVE RELIEF

The public interest analysis in constitutional cases merges with the balance of equities when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("When the Government is the opposing party, the last two factors merge"). Several public interests are served by granting this injunction:

### A. Free speech, protest, and assembly rights are essential for a free people.

The First Amendment exists precisely to protect political speech from government suppression. When government officials use official machinery to punish a citizen for attending a peaceful political rally on a matter of public concern, the public interest demands judicial intervention. Allowing this Resolution to stand unchallenged would signal to every government official in this district that political retaliation is available as a tool. This is a precedent the public interest cannot afford.

### B. Public interest demands protection of the right to vote, due process, and equal protection.

The public interest favors free elections. Allowing a government body to prevent a congressional candidate from voting in person in his own election, particularly when the policy is based on a retaliatory, unnoticed, uninvestigated ban, threatens the integrity of the democratic process itself. Courts have a profound interest in ensuring that elections proceed without the taint of government interference in candidates' participation.

The public interest favors due process. A formal government resolution banning a named citizen from public property, adopted without notice, investigation, or hearing, and never

published to the public, is the antithesis of due process. The public interest in orderly, lawful government action is served by enjoining this Resolution.

The public interest favors equal treatment under law. Four City Council members attended the same demonstration. A Member of Congress attended a similar demonstration elsewhere. Board trustees attended the same type of rally one week later. None were sanctioned. Selective, viewpoint-based punishment is antithetical to equal protection and the rule of law and cannot be allowed to stand.

## V. THE BOND REQUIREMENT SHOULD BE WAIVED OR SET AT A NOMINAL AMOUNT

Federal Rule of Civil Procedure 65(c) requires that a party obtaining a preliminary injunction give security "in an amount that the court considers proper." Courts have broad discretion to waive or nominally set the bond requirement in civil rights cases. *Temple University v. White*, 941 F.2d 201, 219-220 (3d Cir. 1991) (affirming district court discretion over bond requirement). Where plaintiffs bring suit to enforce important federal and public interests, like Plaintiff here, courts commonly waive the bond requirement. *Id.* In cases where the government is representing the public interest, courts often require a nominal bond. *Id.*; *see also Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989).

Defendants face no financial harm from enjoining a constitutional violation. The Resolution generates no revenue. Its enforcement imposes no costs that would be disrupted by an injunction. No bond is warranted. In the alternative, Plaintiff respectfully requests that the bond be set at a nominal sum.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Temporarily restrain Defendants from enforcing the Resolution to prevent Plaintiff from entering his assigned polling place and any public areas necessary to cast his ballot in the June 2, 2026 Democratic primary election;
2. Temporarily restrain Defendants from enforcing the Resolution to bar Plaintiff from attending public meetings or public events on District property that are otherwise open to the general public, absent a specific, individualized, evidence-supported safety determination;
3. Order Defendants to provide written notice to all relevant District staff and security personnel that Plaintiff may not be excluded from his polling place under the Resolution;
4. Schedule a preliminary injunction hearing at the earliest practicable time;
5. Waive the bond requirement or set bond at a nominal amount; and
6. Grant such other and further relief as the Court deems just and proper.

DATED: May 20, 2026

Respectfully submitted,

/s/ *Mahir S. Nisar*
MAHIR S. NISAR (NY #4788766)
mahir@nisarlaw.com

KIMBERLY NOE-LEHENBAUER (OK #34744)*
kimberly@nisarlaw.com

**NISAR LAW GROUP P.C.**
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, New York 10165
(212) 600-9534

*Attorneys for Plaintiff*

**Licensed in OK, not in NY. Practice limited to federal matters.*

**Application pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I, Kimberly Noe-Lehenbauer, certify that on May 20, 2026, I served notice of this Motion and the accompanying Memorandum of Law, Complaint, and all other related documents, via email to:

**Ramon Rivera**
Antonelli Kantor Rivera PC
354 Eisenhower Parkway, Ste. 1000
Livingston, NJ 07039
rrivera@akrlaw.com

**Robert Pruchnik**
JCPS District Counsel
rpruchnik@jcboe.org

**Noemi Velazquez**
noemivelazquez@jcboe.org

**Alpa Patel**
alpapatel@jcboe.org

**Dejon Morris**
dejonmorris@jcboe.org

**Lorenzo Richardson**
lorenzorichardson@jcboe.org

**Afaf Muhammad**
afafmuhammad@jcboe.org

**Tia Rezabala**
tiarezabala@jcboe.org

**Natalia Ioffe**
nataliaioffe@jcboe.org

**Matthew Schneider**
matthewschneider@jcboe.org

**George Blount**
georgeblount@jcboe.org

**Norma Fernandez**
nfernandez2@jcboe.org

/s/ *Kimberly Noe-Lehenbauer*
Kimberly Noe-Lehenbauer, Esq.

May 20, 2026
Date