**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MUSSAB ALI,<br><br>Plaintiff,<br><br>v.<br><br>JERSEY CITY BOARD OF EDUCATION, *et al.*,<br><br>Defendant. | Civil Action No. 2:26 -cv-05754-BRM-JBC |

# DEFENDANT JERSEY CITY BOARD OF EDUCATION BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

**ANTONELLI KANTOR RIVERA PC**
Attorneys for Defendant,
Jersey City Board of Education
354 Eisenhower Parkway, Suite 1000
Livingston, New Jersey 07039
(908) 623-3676
dantonelli@akrlaw.com

**Of Counsel:**
Lori D. Reynolds, Esq. (05260-2013)

**On the Brief:**
Ramon E. Rivera, Esq. (03536-2000)

# TABLE OF CONTENTS


Table of Authorities…………………………………………………………ii

Preliminary Statement………………………………………………………1

Statement of Facts…………………………………………………………..2

Legal Argument……………………………………………………………6

**PLAINTIFF CANNOT SATISFY THE REQUISITE FACTORS FOR TEMPORARY RESTRAINTS AND/OR INJUNCTIVE RELIEF**……………6

**A. Plaintiff Cannot Establish A Likelihood of Success On The Merits**…….7

*1. The Anderson/Burdick Framework is Irrelevant Because The JCBOE Have Not Regulated Voting or Election Administration*……………………………7

*2. Plaintiff Cannot Demonstrate A Severe Burden On His Voting Rights Even If The Court Were To Apply The Anderson/Burdick Balancing Test*………………....8

**B. Plaintiff Cannot Demonstrate Irreparable Harm**………………………11

*1. Plaintiff's Delay in Seeking Injunctive Relief is Fatal To His Request For A Preliminary Injunction*…………………………………………………...…12

*2. Plaintiff's Alleged Irreparable Harm Is Entirely Speculative And Cannot Justify Preliminary Injunctive Relief*……………………………………..14

**C. THE RESOLUTION HAS BEEN AMENDED, RENDING THE MOTION MOOT. AS A RESULT, PLAINTIFF CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS…..**……………………………………………………………15

Conclusion…………………………………………...………………………17

# Table of Authorities

## Cases

Ace Am. Inc. Co. v. Wachovia Ins. Agency Inc., 306 F. App'x 727 (3d Cir. 2009) ……………………………………………………………………………………11

Acierno v. New Castle Cty., 40 F.3d. 645 (3d Cir. 1994)………………………6, 12

Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000) …………………...12

Already, LLC v. Nike, Inc., 568 U.S. 85 (2013…………………………………...16

Anderson v. Celebrezze, 460 U.S. 780 (1983)……………………………….....7,9

Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997)…………………………………11

AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)…………………………………………………………………………6

Burdick v. Takushi, 504 U.S. 428 (1992)……………………………………..8,9

Citibank, N.A. v. Citytrust, 756 F.2d 273 (2d Cir. 1985)…………………………13

CT Install Am. LLC v. Boryszewski, 2023 U.S. Dist. LEXIS 79511 (E.D. Pa 2023)……………………………………………………………………13

Donlow v. Garfield Park Acad., 2010 U.S. Dist. LEXIS 32384 (D.N.J. 2010)…………………………………………………………………..11

EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp., 2006 U.S. Dist. LEXIS 16672 (D.N.J. 2006)………………………………………………13

Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66 (2013)……………………...16

Gruntal & Co. v. Steinberg, 843 F. Supp. 1 (D.N.J. 1994)…………………………7

Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700 (3d Cir. 2004) …………………..6

Lanin v. Boro. of Tenafly, 515 F. App'x 114 (3d Cir. 2013)…………………..12, 13

Los Angeles v. Lyons, 461 U.S. 95 (1983)……………………………………..15

Louis v. Bledsoe, 438 F. App'x 129 (3d Cir. 2011)...... ..............................11

Love v. Does, 2023 U.S. Dist. LEXIS 19495 (D.N.J. 2023)…………...7, 11, 12, 13

Mazurek v. Armstrong, 520 U.S. 968 (1997) …………………………………...7

Murphy v. Hunt, 455 U.S. 478 (1982)……………………………………………16

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578 (3d Cir. 2000)……………………………………………...6

Peterson v. HVM L.L.C., 2015 U.S. Dist. LEXIS 75424 (D.N.J.2015)…………11

Pharmacia Corp. v. Alcon Labs, inc., 201 F.Supp. 2d 335 (D.N.J 2002)…………13

ProFoot, Inc. v. MSD Consumer Care, Inc., 2012 U.S. Dist. LEXIS 83427 (D.N.J. 2012)……………………………………………………………...14

Smart Commc'ns Holding Inc. v. Global Tel-Link Corp., 2022 U.S. Dist. LEXIS 64999 (M.D. Pa. 2022)……………………………………………………13

Tilden Recreational Vehicles, Inc. v. Belair, 786 F. App'x 335 (3d Cir. 2019)…...11

Tracey v. Recovco Mortg. Mgtm. LLC, 451 F. Supp. 3d 337 (D.N.J. 2020) …….11

Trasilwrap Co. v. Metal FX Films, LLC, 2014 U.S. Dist. LEXIS 151088 (D.N.J. October 22, 2014) ………………………………………………………7

Winter v. NRDC, Inc., 555 U.S. 7, 129 S.Ct. 365 (2008)………………………7, 15

**Constitutional Provisions**

U.S. Const. art. III…………………………………………………………16

N.J. Const., Art. I, Para. 2…………………………………………………..9

**Statutes**

N.J. Stat. § 19:8-3.2…………………………………………………………10

N.J Stat § 19:15A-1…………………………………………………………10

N.J. Stat. § 19:53C…………………………………………………………10

N.J. Stat. § 19:63-3…………………………………………………………10

**Other Authorities**

Fed. R. Civ. 65 …………………………………………………………………..1, 6

11AC. Wright, A. Miller & M. Kane, Federal Practice and Procedure §2948 (2d ed. 1995) ………………………………………………………………………………7

**PRELIMINARY STATEMENT**

This Firm represents the Jersey City Board of Education (the "JCBOE", "Board", or "Defendant") with respect to the above-captioned matter. Defendant respectfully submits this Brief in Opposition to Plaintiff Mussab Ali's ("Plaintiff" or "Ali") Motion for a Preliminary Injunction. Plaintiff's request for such extraordinary relief must be denied because Plaintiff cannot satisfy the requirements set forth under Rule 65 of the Federal Rules of Civil Procedure, and the matter is moot.

This matter arises from Plaintiff's decision to actively facilitate and enable a student walkout from Jersey City Public School during mandatory school hours on February 13, 2026. Despite advance warnings from Board leadership and the Superintendent regarding student safety concerns, Plaintiff assumed responsibility for coordinating the event by recruiting adult volunteers, co-signing the event permit with the City of Jersey City as the designated contact person, and publicly assuring students that he would shield them from disciplinary consequences if they violated school attendance policies. Student-led social media posts expressly represented that, “If ANY student does face any repercussions, Mussab Ali will be there to help you”, and "AS LONG AS YOU ARE PEACEFUL AND FOLLOW INSTRUCTIONS, MUSSAB ALI HAS YOUR BACK!" These assurances directly undermined the Board's ability to supervise minor students under its care and created substantial safety risks.

In response to Plaintiff's conduct, the Board adopted a Resolution condemning Plaintiff’s actions and restricting Plaintiff's access to District facilities during regular school hours. The Resolution was never intended to restrict Plaintiff's constitutional right to vote. Furthermore, on May 21, 2026, the Board formally amended the Resolution to expressly permit Plaintiff access to JCBOE facilities for all election-related activities, including voting, and public events held outside regular instructional hours. Accordingly, Plaintiff's request for emergency injunctive relief is now moot, and the Motion should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff Mussab Ali is a former President of the Jersey City Board of Education. Due to his prior service, Plaintiff is familiar with the Board's legal obligations regarding student safety and supervision during instructional hours and the legal exposure that attaches when students depart school grounds without authorization.

Beginning several days before February 13, 2026, JCBOE administrators became aware of social media activity promoting a coordinated yet unsanctioned student walkout from James J. Ferris High School, Henry Snyder High School, and William L. Dickinson High School, in protest of ICE operations in Jersey City. On February 11, 2026, Superintendent Dr. Norma Fernandez (“Dr. Fernandez”) advised Board leadership that the District had been monitoring online activity concerning a

possible student walkout. Dr. Fernandez confirmed that she had begun coordinating safety preparations with affected school principals and specifically noted that "individuals outside of the student body may be prompting this situation." That same day, the District issued a written communication to all Jersey City Public School families advising that student walkouts during the school day were unauthorized and that students who departed without permission would receive unexcused absences and be subject to the Student Code of Conduct. Students remained free to express their views outside school hours and through sanctioned activities.

Board President Noemi Velazquez ("Velazquez") contacted Plaintiff directly on the evening of February 10, 2026, and again on the morning of February 11, 2026. Velazquez advised Plaintiff that the District would enforce its Code of Conduct and proposed a lawful alternative: that students remain in school through the end of the instructional day and march to City Hall following dismissal. Velazquez further expressed concern that the event's promotional flyer gave students "permission and encouragement to defy school rules."

Notwithstanding the Board's express warnings, Plaintiff assumed responsibility for coordinating the public-facing logistics of the February 13, 2026, demonstration. Plaintiff amplified student social media posts promoting the unauthorized walkout, communicated with the City of Jersey City and the Jersey City Police Department regarding the event, recruited adult volunteers, and co-

signed the event permit documentation with the City as the designated contact person. On February 12, 2026, Deputy Mayor for Education Dia Bryant confirmed to Velazquez that (1) there had been no permit issued for the demonstration; (2) Plaintiff was the listed contact for the event; and (3) that a public safety notification had been created for a planned procession and rally expected to involve approximately 400 participants between 1:00 p.m. and 3:00 p.m.

Student-led social media posts expressly assured students that "AS LONG AS YOU ARE PEACEFUL AND FOLLOW INSTRUCTIONS, MUSSAB ALI HAS YOUR BACK!" and that Plaintiff would personally assist any student facing disciplinary repercussions for leaving school. These assurances, backed by a known public figure and former Board President, directly induced students to disregard the District's attendance policies and supervision requirements. On the day of the walkout itself, Plaintiff texted Velazquez in real time to report that schools were "locking the doors," confirming his active involvement as events unfolded.

In the days following the walkout, Plaintiff denied organizing the event, characterizing the description as a "bold faced lie" and asserting his role had been solely to protect student safety. In response to Plaintiff's conduct, the Board adopted a Resolution restricting his access to District facilities during regular school hours.

Following adoption of the Resolution, Plaintiff sought access to JCBOE facilities on multiple occasions, requesting through Superintendent Fernandez that

he be permitted to attend the McNair Senior Night event and the Read Across America event; neither of which implicated the voting access he now claims to have been denied. Plaintiff never sought, and was never denied, access to any JCBOE facility for the purpose of casting his vote. On March 23, 2026, Plaintiff contacted Dr. Fernandez regarding a proposed Civic Hackathon event, and on March 25, 2026, separately invited Velazquez to serve as a judge. Dr. Fernandez advised that budget constraints precluded formal Board sponsorship but expressly confirmed that Plaintiff remained free to advertise the event independently and invite student participation outside JCBOE participation.

Rather than seek authorization, Plaintiff unilaterally disregarded the Resolution on Saturday, April 25, 2026, when he entered Franklin L. Williams M.S. 7 for a Market Day event without obtaining prior approval from the Superintendent. Plaintiff gained access to the building at approximately 11:30 AM, during a period when the Resolution remained fully operative. The unauthorized entry was made without notice, and without approval. On May 22, 2026, shortly after Plaintiff voiced concerns about his ability to vote at JCBOE facilities for the first time, the Board formally amended the Resolution to expressly permit Plaintiff's access to JCBOE facilities outside regular school hours and for all election-related activities and events. As Plaintiff never sought and was never denied voting access under the original Resolution and the Resolution has been amended to expressly permit access

to JCBOE facilities outside regular school hours and for all election-related activities, his request for emergency injunctive relief is moot.

## LEGAL ARGUMENT

### PLAINTIFF CANNOT SATISFY THE REQUISITE FACTORS FOR TEMPORARY RESTRAINTS AND/OR INJUNCTIVE RELIEF.

Fed. R. Civ. 65 empowers courts to grant temporary as well as preliminary injunctive relief when warranted. "[I]njunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004) (quoting AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994)). The primary purpose of a temporary restraining order is to maintain the "status quo until a decision on the merits of a case is rendered." Acierno v. New Castle Cty., 40 F.3d. 645, 647 (3d Cir. 1994).

The standard for a preliminary injunction requires a plaintiff establish the following four (4) elements: "1) the plaintiff is likely to succeed on the merits; 2) denying the injunction will result in irreparable harm to the plaintiff; 3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596 (3d Cir. 2000). Courts have noted that a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."

Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11AC. Wright, A. Miller & M. Kane, Federal Practice and Procedure §2948 at 129-130 (2d ed. 1995)). Additionally, the United States Supreme Court has held that "[a] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." Winter v. NRDC, Inc., 555 U.S. 7, 129 S.Ct. 365, 375 (2008). Further, a preliminary injunction may not be issued where there are disputed issues of fact. Gruntal & Co. v. Steinberg, 843 F. Supp. 1, 15 (D.N.J. 1994) (quoted by Trasilwrap Co. v. Metal FX Films, LLC, 2014 U.S. Dist. LEXIS 151088 at *3 (D.N.J. October 22, 2014). As a threshold matter, the Court considers the first two prongs together. Only when a plaintiff has sufficiently met the first two prongs, does the Court consider the third prong relating to the possibility of harm to other parties and finally, evaluate whether public interest is served by granting injunctive relief. See, Love v. Does, 2023 U.S. Dist. LEXIS 19495 *4 (D.N.J. 2023).

## A. PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.

### 1. *The Anderson/Burdick Framework Is Irrelevant Because The JCBOE Have Not Regulated Voting or Election Administration.*

As set forth at length above, to establish a likelihood of success on the merits for emergency injunctive relief, a plaintiff must demonstrate a substantial probability of prevailing on the underlying claim. Plaintiff argues that government action that substantially burdens the right to vote is subject to heightened scrutiny under the Anderson-Burdick framework. In Anderson, the Supreme Court evaluated filing

deadlines governing presidential candidates. Anderson, 460 U.S. 782-83 (1983). In Burdick, the Court considered Hawaii's prohibition on write-in voting. Burdick v. Takushi, 504 U.S. 428, 432-434 (1992). These matters are fundamentally different from the present case.

Here, the challenged Resolution against Plaintiff is not an election law or voting regulation that implicates the Anderson/Burdick analysis. Instead, the Resolution is a preexisting school safety determination. The Resolution applies independent of Plaintiff's political candidacy, as the Resolution expressly states that the ban relates to Plaintiff's conduct regarding the February 13, 2026, political rally at City Hall in Jersey City. Unlike Burdick, which concerned write-in voting and ballot access procedures, the JCBOE Resolution does not regulate how Plaintiff votes. Rather, it is a narrowly tailored restriction on access to school facilities, grounded entirely in concrete student safety concerns. As a result, the Resolution, which focuses on school operation procedures, cannot be equated with political candidacy as discussed in Anderson. In sum, Plaintiff's attempt to transform the Resolution into a voting-right claim does not have merit because the Anderson/Burdick analysis does not apply.

2. *Plaintiff Cannot Demonstrate A Severe Burden On His Voting Rights Even If the Courts Were to Apply The Anderson/Burdick Balancing Test.*

As a New Jersey voter, Plaintiff has extensive options that allow him to vote early both in person or by mail. As a result, he cannot show a severe burden on his voting rights.

The Anderson/Burdick framework balances the burden imposed by an election law on constitutional rights against the state's interests in regulating elections. Anderson v. Celebrezze, 460 U.S. 780, 786-790 (1983); Burdick v. Takushi, 504 U.S. 428, 432-434 (1992). The analysis first accesses the "character and magnitude" of the burden that the challenged law or regulation imposes on constitutional rights. Anderson, 460 U.S. at 783; Burdick, 504 U.S. at 434. The analysis then evaluates the interest the state uses to justify the burden. Anderson, 460 U.S. at 783; Burdick, 504 U.S. at 434. The level of scrutiny applied depends on the severity of the burden. Burdick, 504 U.S. at 434. If the burden is severe, the law must be narrowly tailored to advance a compelling state interest. Id. If the burden is reasonable and nondiscriminatory, the state's important regulatory interests are generally sufficient to justify the restriction. Id.

The United States Supreme Court has repeatedly recognized that reasonable and nondiscriminatory restrictions are generally justified by important government interest. Burdick, 504 U.S. at 434. Likewise, New Jersey courts have consistently emphasized the importance of protecting the right to vote. N.J. Const., Art. I, Para. 2. New Jersey has provided various ways of voting by way of voting in-person, early

voting, mail-ballot, or provision ballot. N.J. Stat. § 19:63-3; N.J Stat § 19:15A-1; N.J. Stat. § 19:53C-1; N.J. Stat. § 19:53C-3.

Indeed, mail-in ballots can be requested by any New Jersey voter. N.J. Stat. § 19:63-3. Voters can apply for a mail-in ballot up to seven days before the election in writing or electronically. N.J. Stat. § 19:63-3, N.J. Stat. § 19:8-3.2. Provisional ballots allow voters whose registration information is missing or who face other barriers to voting at their assigned polling place to cast a provisional ballot after completing an affirmation statement. N.J. Stat. § 19:53C. Further, early voting permits registered voters to vote at specially designated polling places before the day of certain elections. N.J Stat § 19:15A-1.

As a result, Plaintiff retains full access to vote through New Jersey's extensive early voting system. Hudson County operates several early-voting locations throughout the County, which are not on school property, seven of which are located elsewhere in Jersey City. Moreover, in-person early voting in New Jersey for the 2026 primary election runs from May 26, 2026 through May 31, 2026. Critically, Plaintiff has multiple accessible venues to exercise his right to vote in person and remains wholly unencumbered in doing so regardless of the Board's Resolution.

Here, Plaintiff alleges that he is unable to vote in person on June 2, 2026, because his designated polling place is located inside a building owned and operated by the Jersey City Public School District. However, first and foremost, the

Resolution has been amended to allow him to access JCBOE property for all election-related activities. Moreover, even if the Resolution were not amended, Plaintiff has cited no authority establishing a constitutional right to enter otherwise restricted government property merely because it temporarily serves as a polling location. Any inconvenience Plaintiff may face is precisely that, an inconvenience, and not disenfranchisement. Simply put, Plaintiff cannot succeed on this claim.

**B. PLAINTIFF CANNOT DEMONSTRATE IRREPARABLE HARM.**

As the moving party, plaintiff has the "burden of establishing a 'clear showing of immediate irreparable injury.'" Tracey v. Recovco Mortg. Mgtm. LLC, 451 F. Supp. 3d 337, 344 (D.N.J. 2020) (quoting Louis v. Bledsoe, 438 F. App'x 129, 131 (3d Cir. 2011)). Irreparable injury means harm "such that legal remedies are rendered inadequate." Tilden Recreational Vehicles, Inc. v. Belair, 786 F. App'x 335, 342 (3d Cir. 2019) (citing Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997). Also, the purported harm cannot be adequately remedied by monetary damages. Peterson v. HVM L.L.C., 2015 U.S. Dist. LEXIS 75424 at *13, 15 (D.N.J.2015).

Demonstrating irreparable harm is "perhaps the single most important prerequisite for issuing a preliminary injunction." Love v. Does, 2023 U.S. Dist. LEXIS 19495 *5-6 (D.N.J. 2023) (citing Donlow v. Garfield Park Acad., 2010 U.S. Dist. LEXIS 32384 (D.N.J. 2010)). Before a court may issue preliminary injunctive relief, it must be convinced that the injunction is "the only way of protecting the

plaintiff from [the] harm" in question. See, Ace Am. Inc. Co. v. Wachovia Ins. Agency Inc., 306 F. App'x 727, 731 (3d Cir. 2009). "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat" of irreparable harm. See, Adams v. Freedom Forge Corp., 204 F.3d 475, 487 (3d Cir. 2000). This requires more than just "a possibility of a remote future injury," but rather sufficient evidence to make a "clear showing of immediate irreparable injury." Acierno v. New Castle Cnty, 40 F.3d 645, 655 (3d Cir. 1994) (quoting Continental Grp., Inc. v. Amoco Chems Corp., 614 F.2d 351 (3d Cir. 1980)). The risk of irreparable harm **must not be speculative**. Acierno, 40 F.3d at 655. "Preliminary injunctions are generally granted under the theory that there is an *urgent* need for speedy action to protect the plaintiff[']s [ ] rights." Lanin v. Boro. of Tenafly, 515 F. App'x 114, 117-118 (3d Cir. 2013). **Therefore, "[d]elay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic speedy action."** Id. at 118 (emphasis added).

1. *Plaintiff's Delay In Seeking Injunctive Relief Is Fatal To His Request For A Preliminary Injunction.*

Simply put, Plaintiff's delay in seeking a preliminary injunction undermines his application entirely. For instance, in Love v. Does, 2023 U.S. Dist. LEXIS 19495, *supra*, the District Court denied plaintiff's motion finding he failed to make a clear showing of immediate injury. Crucial was the fact that plaintiff's request for injunctive relief was based upon the same alleged Constitutional violations plead in

his original Complaint but plaintiff waited five (5) years to file such Motion. Id. at *6-7.[1] As explained by the Court, "a Plaintiff's delay in seeking preliminary injunctive relief is evidence that speedy relief is not needed." EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp., 2006 U.S. Dist. LEXIS 16672 at *12 (D.N.J. 2006); Lanin 515 Fed. Appx. 114, 117 (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985)). Accordingly, the District Court found plaintiff's delay in seeking injunctive relief was "indicative of a lack of irreparable harm under the standard." Id. at * 7.

In CT Install Am. LLC v. Boryszewski, 2023 U.S. Dist. LEXIS 79511 (E.D. Pa 2023), the District Court for the Eastern District of Pennsylvania denied plaintiff's request for a preliminary injunction finding plaintiff's seventeen (17) month delay in seeking such relief showed it would not suffer immediate irreparable harm. Id. at *10. Like Love, the Court in CT recognized that unexplained delays are "inconsistent with a showing of immediate irreparable harm necessary to obtain a preliminary injunction. Id. at *7 (citing Lanin, 515 F. App'x at 118); Smart Commc'ns Holding Inc. v. Global Tel-Link Corp., 2022 U.S. Dist. LEXIS 64999

[1] Many courts have found that a delay of just weeks or months precludes a showing of irreparable harm. Logic Tech Dev. LLC v. Levy, 2021 U.S. Dist. LEXIS 165203 at *3 (D.N.J. 2021) (citing New Dana Perfumes Corp. v. The Disney Store, Inc., 131 F.Supp.2d 616, 630 (M.D. Pa. 2001) (finding that an unexplained delay of two months in filing cease and desist letter followed by unexplained delay of five months in moving for injunctive relief precluded a finding of irreparable harm)).

(M.D. Pa. 2022); and Pharmacia Corp. v. Alcon Labs, inc., 201 F.Supp. 2d 335, 383-84 (D.N.J 2002). Indeed, in ProFoot, Inc. v. MSD Consumer Care, Inc., the Court found that a three (3) month delay in requesting a preliminary injunction—like in the instant matter—illustrated a lack of irreparable harm. 2012 U.S. Dist. LEXIS 83427 (D.N.J. 2012).

Here, Plaintiff hinges his claim of irreparable harm upon the singular premise that absent a preliminary injunction the Board will enforce its Resolution, and the Plaintiff will not be permitted to vote in person for the June 2, 2026 Democratic primary. However, it has been more than three (3) months since the initial Resolution was passed on February 13, 2026. Indeed, Plaintiff only recently filed the Complaint and moved for a preliminary injunction on or about on May 20, 2026. As a declared candidate for the United States House of Representatives, Plaintiff was or should have been keenly aware of both the date of the election of June 2, 2026, and his designated polling place for all applicable elections. Plaintiff's delay in seeking such relief contradicts his claim of irreparable harm. As a result, his application must be denied.

2. *Plaintiff's Alleged Irreparable Harm is Entirely Speculative and Cannot Justify Preliminary Injunctive Relief.*

Simply put, Federal courts do not grant preliminary injunctions based on speculative injury. Instead, the plaintiff must establish a likelihood of irreparable harm, because "[i]ssuing a preliminary injunction based only on a possibility of

irreparable harm" is improper, and equitable relief is unavailable where the alleged future injury is merely "conjectural" or "hypothetical." Winter v. NRDC, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 375-76, 172 L.Ed.2d 249, 262 (2008); Los Angeles v. Lyons, 461 U.S. 95, 103, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).

In the instant matter, Plaintiff argues that because he has been denied entry into District facilities on two prior occasions, there is a risk that he will be unable to vote in person on June 2, 2026, at his polling place without permission.

However, Plaintiff's claim of irreparable harm is entirely speculative. Plaintiff offers no evidence that the Superintendent has denied, or would deny, a request to vote. In fact, Plaintiff has never even submitted a request to the Superintendent seeking permission to enter his polling place for the purpose of voting before filing this application. Moreover, Plaintiff has previously entered JCBOE property in noncompliance with the Resolution without consequence. On Saturday, April 25, 2026, Plaintiff entered Franklin L. Williams M.S. 7 at approximately 11:30 AM for a Market Day event without obtaining prior approval from the Superintendent. Plaintiff has previously shown no hesitation in accessing District facilities without the Superintendent's approval. Simply put, there is no irreparable harm here.

**C. THE RESOLUTION HAS BEEN AMENDED, RENDERING THE MOTION MOOT. AS A RESULT, PLAINTIFF CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.**

In general, a case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. Murphy v. Hunt, 455 U. S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982). "A case becomes moot--and therefore no longer a "Case" or "Controversy" for purposes of Article III of the U.S. Constitution--when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 85, 133 S. Ct. 721, 722, 184 L.Ed.2d 553, 553 (2013). A case or "an actual controversy must be extent at all stages of review, not merely at the time the complaint is filed." Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 66, 133 S. Ct. 1523, 1524, 185 L.Ed.2d 636, 636 (2013).

Here, the JCBOE adopted a revised Resolution on May 21, 2026 at its regularly scheduled Board Meeting. The revised Resolution now provides:

> NOW, THEREFORE, be it resolved that the Jersey City Board of Education:
> 1. Condemns Mr. Ali's encouragement of JCBOE students to intentionally violate the Student Code of Conduct to miss school to attend the February 13, 2026, political rally at City Hall of Jersey City.
> 2. Bans Mr. Ali from access to any District facility *during student instructional hours* unless he receives prior approval from the Superintendent, or he is attending a public meeting for the Jersey City Board of Education*, or he is participating in any legally protected election-related activity, including but not limited to voting in an election.* [emphasis added].

In other words, this amended Resolution has already granted Plaintiff the relief he seeks through this Motion. Specifically, the revised Resolution expressly permits

Plaintiff to: (1) enter his assigned polling place and any public areas necessary to cast his ballot in person at the June 2, 2026 Democratic Primary Election; and (2) attend public meetings and events on District property that are open to the public, provided such events do not occur during student instructional hours.

These provisions directly address and resolve the concerns Plaintiff raises in his Motion. Plaintiff can now vote in person at his designated polling location without restriction. Plaintiff can also attend public Board meetings and community events held on District property outside of instructional time. The Board has affirmatively granted Plaintiff access to exercise both his right to vote and his right to attend public meetings, the very relief Plaintiff purports to seek through his emergent motion. There is no remaining dispute for this Court to resolve, and no injunctive relief is necessary. Accordingly, Plaintiff's Motion for a preliminary injunction is moot.

## CONCLUSION

For the reasons set forth herein, this Court should deny Plaintiff's Motion for a Preliminary Injunction in its entirety and should abstain from hearing this matter, together with granting such other and further relief as the Court deems necessary.

Respectfully submitted,

By: /s/ *Ramon E. Rivera*
Ramon Rivera

Dated: May 22, 2026